# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 6, 2026

Lyle W. Cayce
Clerk

————————

No. 25-50714

————————

Moctezuma Rivera Castelan, *On Behalf of Himself and Others Similarly Situated*,

*Plaintiff—Appellee*,

*versus*

Ronny Taylor,

*Defendant—Appellant*.

——————————————————————

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:23-CV-1394

——————————————————————

Before Wiener, Haynes, and Graves, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

As alleged, Moctezuma Rivera-Castelan was arrested in Kinney County, Texas for criminal trespass in a disaster area. Rivera was among many arrested during Operation Lone Star, a statewide initiative to increase arrests of unlawful migrants in Texas border counties. After his arrest, Rivera was brought to a makeshift detention facility: Val Verde Processing Center. A paperwork error at Val Verde resulted in a nearly three-month delay for Rivera to receive appointed counsel. Even then, his lawyer did no work on his case for six months. When a new lawyer was appointed, she challenged

No. 25-50714

Rivera's detention. Within five days, the prosecutor dropped the case against him, and he was released.

Rivera alleges that Ronny Taylor, the Val Verde facility administrator, violated the Sixth Amendment by failing to timely transmit appointed counsel paperwork to the public defenders' office. We must resolve whether Taylor enjoys qualified immunity.

Rivera seeks to evade the immunity framework by claiming that Taylor assumed a magistrate's nondiscretionary duty to transmit appointed-counsel paperwork within 24 hours of an initial appearance. Yet the Texas initial-appearance statute explicitly assigns that duty to the magistrate—not to a detention facility administrator. And Rivera's delegation theory cannot overcome the statutory text and the longstanding Texas-law principle that an officer may not delegate their official statutory duties to another official. So as alleged, Taylor performed a discretionary duty, and we reach the immunity framework.

Rivera cannot overcome qualified immunity. Even if the expiry of the deadline for an arrestee's bail to be reduced to an affordable amount is a critical stage, Rivera cannot show a previous decision that clearly established his right to counsel then. Taylor enjoys qualified immunity as a result.

## I. Background

### A. Under Texas law, a magistrate must transmit counsel-appointment paperwork, or cause it to be transmitted, within 24 hours of an article 15.17 hearing.

Under Texas law, when someone is arrested, they must be brought before a magistrate within 48 hours. Tex. Code Crim. Proc. Ann. art. 15.17(a). At this initial appearance—an article 15.17 hearing—the magistrate informs the arrestee of the accusations against them and their rights, including that they may request appointed counsel. *See id.*

No. 25-50714

If an arrestee requests counsel and qualifies for it, the magistrate either appoints counsel themselves, or they must "transmit, or cause to be transmitted to the court or to the [managed assigned counsel provider], the forms requesting the appointment of counsel." *See id.*; Tex. Code Crim. Proc. Ann. art. 1.051(c). A managed assigned counsel program is "a governmental entity, nonprofit corporation, or bar association under a written agreement with a governmental entity," that assumes the duty to appoint counsel. Tex. Code Crim. Proc. Ann. art. 26.047.

## B. If the state is not ready for trial, an arrestee is entitled to an affordable bond.

Texas law also restricts detention to prevent unnecessary delay before trial. If the state is not ready for trial, article 17.151 requires an arrestee's release "either on personal bond or by reducing the amount of bail" within "30 days" if the arrestee is "accused of a misdemeanor punishable by . . . more than 180 days" in prison. Tex. Code Crim. Proc. Ann. art. 17.151 § 1.[1] Without an indictment, the state "cannot announce ready for trial." *Ex parte Castellano*, 321 S.W.3d 760, 763 (Tex. App.—Fort Worth 2010, no pet.). Nor can the state "declare itself . . . ready for trial" after the article 17.151 deadline has run. *Id.*

If the court reduces bail, it must set bond at "an amount that . . . [the] accused can make." *Rowe v. State*, 853 S.W.2d 581, 582 n.1 (Tex. Crim. App. 1993). Operation Lone Star suspended article 17.151's automatic release provision, but the other option remained: to reduce bail to an affordable amount. *Ex parte Lanclos*, 624 S.W.3d 923, 927 (Tex. Crim. App. 2021).

---

[1] Article 17.151 prescribes different deadlines based on the maximum term of imprisonment. Rivera's crime of arrest—criminal trespass in a disaster area—carried a maximum sentence of one year in prison, so the 30-day deadline applied to him *See* Tex. Code Crim. Proc. Ann. art. 17.151; Tex. Penal Code §§ 12.50, 30.05.

3

No. 25-50714

## C. In 2021, Texas launched Operation Lone Star, which aimed to dramatically increase migrant arrests at the border.

These procedures governed when Rivera was arrested. He was among the many migrants arrested under Operation Lone Star, which launched in early 2021.[2] Under Lone Star, Texas declared a state of disaster in participating border counties—including Kinney County. The state then deployed its own law enforcement and military officials to those "counties to help them arrest and jail migrants, mostly for misdemeanor trespass."

Texas also helped the counties with arraignment and detention of migrants. When a county arrested a migrant, they were transported to Val Verde Processing Center, "a makeshift [tent] arraignment site" erected in July 2021. The Texas Division of Emergency Management hired Taylor to administer Val Verde, in concert with a government contractor, Recana Solutions. At Val Verde, magistrates held arrestees' article 15.17 hearings by videoconference. If an arrestee could not make bail, the state would transfer them to a repurposed state prison, such as the Dolph Briscoe Unit (Briscoe) and the Manuel A. Segovia Unit (Segovia).

## D. After Rivera's arrest, he remained effectively without counsel for eight months.

Rivera was arrested on October 6, 2021, on suspicion of criminal trespass in a disaster area. *See* Tex. Penal Code Ann. §§ 12.50, 30.05. Soon after, Rivera appeared for a remote article 15.17 hearing at Val Verde. At the hearing, Rivera requested an appointed lawyer, and the magistrate found that he qualified for one. Because Rivera could not afford bail, he was sent on to Briscoe.

---

[2] Applying our motion to dismiss standard, we credit Rivera's allegations as true, except for "conclusory allegations, unwarranted factual inferences, or legal conclusions." *McKay v. LaCroix*, 117 F.4th 741, 746 (5th Cir. 2024).

4

No. 25-50714

Kinney County used Lubbock Private Defenders Office as its managed assigned counsel provider. So article 15.17 required the magistrate to send Rivera's paperwork to the Lubbock Defenders within 24 hours. *See* Tex. Code Crim. Proc. Ann. art. 15.17(a). But nobody at Val Verde sent the paperwork until the Lubbock Defenders "specifically requested [it] from Taylor, along with the missing paperwork of 50 other named [arrestees]" on December 16, 2021. When Taylor received the request, he forwarded it to a subordinate, who sent Rivera's paperwork three days later.

Gary Villarreal was appointed the next day. But Villarreal never met with Rivera or worked on his case. After six months, Villarreal was removed as counsel. Meanwhile, Rivera was transferred to Segovia in January 2022.

Once Villarreal was removed, Rivera received a new lawyer on June 9, 2022. Her office swiftly informed the prosecutor that Rivera had never been formally charged, so he "was being illegally held past the date that [article 17.151] required his release." *See* Tex. Code Crim. Proc. Ann. art. 17.151. On June 14, the state dropped the case against Rivera. He was released and he returned to Mexico. Rivera spent 252 days in custody; he was never charged.

## E. Rivera sued Taylor and others in federal court, and the district court denied Taylor qualified immunity.

In November 2023, Rivera sued Villarreal, Kinney County, Recana, and Taylor in federal court. Rivera brought a 42 U.S.C. § 1983 claim against Taylor, Recana, and Kinney County, alleging Fourteenth and Sixth Amendment violations. He brought these claims on behalf of a putative class who allegedly suffered similar treatment during Lone Star. He also sued Recana for negligence, and Villarreal for malpractice.

When Taylor moved to dismiss, the district court denied his motion. *Castelan v. Villarreal*, No. 5:23-CV-1394, 2025 WL 2375406, at *1 (W.D. Tex. Aug. 14, 2025). It held that Taylor had exceeded his discretionary

No. 25-50714

authority, so he could not claim qualified immunity. *Id.* at *3–6. Taylor appealed. Our court has stayed Rivera's other claims until we resolve Taylor's appeal.

## II. Our Review

Qualified immunity generally shields government officials so long "as their conduct does not violate [a] clearly established [federal] right[]." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis prescribes "a shifting burden of proof." *Cherry Knoll, L.L.C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019). "The defendant official must first" show "that the challenged conduct was within the scope of [their] discretionary authority." *Id.* If the official carries this burden, it shifts to the plaintiff to overcome qualified immunity. *Roy v. City of Monroe*, 950 F.3d 245, 254 (5th Cir. 2020). The plaintiff must plead facts that show that the official (1) violated their federal right, and (2) that the right was clearly established at the time. *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019).

We review de novo the denial of a motion to dismiss that rejects a qualified immunity defense. *Diaz v. Cantu*, 123 F.4th 736, 747 (5th Cir. 2024). We have interlocutory jurisdiction to review such denials. *McNeal v. LeBlanc*, 90 F.4th 425, 430 (5th Cir. 2024). But this jurisdiction "is sharply limited" to resolving whether a defendant enjoys qualified immunity. *Diaz*, 123 F.4th at 750. If the official cannot show that they acted within their discretionary authority, they never reach the immunity framework. *Id.* at 749–50.

Taylor urges us to resolve whether he acted within his discretionary authority after we resolve whether Rivera states a constitutional claim. This takes *Iqbal*'s collateral-order discussion too far. Of course, "whether a particular complaint sufficiently alleges a clearly established violation of law cannot be decided in isolation from the facts pleaded." *Iqbal*, 556 U.S. at

6

673. So the qualified immunity prongs are "inextricably intertwined," and if we have jurisdiction to consider the second prong, we have jurisdiction to consider the first. *See id.* (citation omitted).

But unlike the clearly-established law inquiry, we may examine an official's authority separately from the facts pleaded—as a matter of an official's statutory authority. *See Sweetin*, 48 F.4th at 392. And we must do so first, to confirm our jurisdiction to review the allegations. *See Diaz*, 123 F.4th at 749–50. Reversing this order would allow Taylor to escape his two burdens: to establish our appellate jurisdiction, and to show that he performed a discretionary function. *See id.*; *Martin v. Halliburton*, 618 F.3d 476, 481 (5th Cir. 2010). Consequently, we address Taylor's authority first.

## III. Discussion

### A. Taylor acted within his discretionary authority.

#### 1. To resolve the discretionary-authority inquiry, we examine an official's statutory authority.

 "An official acts within [their] discretionary authority when [they] perform[] nonministerial acts within the boundaries of [their] official capacity." *Tamez v. City of San Marcos*, 118 F.3d 1085, 1091–92 (5th Cir. 1997). State law defines these boundaries. *Sweetin*, 48 F.4th at 392.

Yet we eschew state-law labels. Taylor and Rivera often cite Texas decisions that discuss what kinds of duties qualify as discretionary for state-law immunity purposes. But our court has never relied on state-law labels. In *Cherry Knoll*, a city manager filed certain land plats "unlawfully . . . to drive down the cost of" a certain plat to force its owner to sell. 922 F.3d at 318. Because the city code gave officials "no authority to file plats affecting private property without the [landowner's] consent" the manager exceeded his discretionary authority. *See id.* at 319. Similarly, in *Sweetin*, a city "permit officer" detained emergency medical technicians to

determine whether their ambulance permits were valid. 48 F.4th at 392. But "state law [did] not give a permit officer the authority to [ever] conduct stops," so the officer exceeded his discretionary authority. *Id.* And in *Diaz*, because a state judge presiding over an administrative proceeding lacked statutory authority to issue a contempt sanction outside of a judicial proceeding, she exceeded her discretionary authority when she did so. 123 F.4th at 747–49.

These decisions never mention whether a Texas court would dub the official's authority discretionary for a state-law immunity analysis. We follow their example, and examine how Texas statutes assign the duty to transmit appointed-counsel paperwork. Only then do we resolve, as a matter of federal law, whether that duty is discretionary.

### *2. A magistrate cannot delegate their statutory duty to transmit appointed-counsel paperwork.*

Rivera argues that Taylor had a nondiscretionary duty to send appointment paperwork to the Lubbock Defenders within 24 hours. He relies on article 15.17(a), which provides that if a magistrate finds appointed counsel necessary, they have 24 hours to "transmit, or cause to be transmitted," the forms requesting appointed counsel. Tex. Code Crim. Proc. Ann. art. 15.17(a). This text plainly assigns the duty to the magistrate. *See id.* Yet Rivera argues that the magistrate delegated this duty to Taylor.

Rivera's support for his delegation theory is weak. He chiefly relies on *Krug v. Lincoln National Life Insurance Co.*, 245 F.2d 848 (5th Cir. 1957). Our court acknowledged in *Krug* that an administrative body can delegate some "administrative and ministerial duties" to its employees. *Krug*, 245 F.2d at 853. Hence the Texas board of insurance commissioners could delegate its statutory duty to approve insurance contracts to its clerk employees. *Id.* at 850, 852–53. But delegation within a single office raises an entirely different

issue than the transfer of a mandatory duty between a judicial officer and an executive official. So *Krug* provides little guidance here.

And it is well-established under Texas law that "a public officer . . . cannot delegate [their] official duties to another, other than [their] duly appointed deputies." *See, e.g.*, *Comm'rs Ct. v. Fullerton*, 596 S.W.2d 572, 578–79 (Tex. App.—Houston [1st Dist.] 1980 writ ref't n.r.e.); *Wagner v. Urban*, 170 S.W.2d 270, 272–73 (Tex. App.—Amarillo 1943, no writ). This is why, for example, a judge's statutory duty to explain the allegations against the child in a delinquency proceeding "cannot be delegated to the prosecutor," since "the statue unequivocally" assigns the duty to the judge. *See In re K.L.C.*, 990 S.W.2d 242, 243–44 (Tex. 1999).

Likewise, a magistrate—another judicial officer—cannot delegate their article 15.17 duty to transmit appointment paperwork to a detention facility administrator—an executive official. And Article 15.17(a) is unequivocal: If the magistrate does not transmit the paperwork themselves, they must "cause [it] to be transmitted." Tex. Code Crim. Proc. Ann. art. 15.17(a). Hence, the duty to ensure timely transmission of the paperwork remains with the magistrate, even if someone else performs the task.

### 3. The discretionary-authority inquiry is not a fact question.

Rivera counters that the written agreement underlying the managed assigned program or a description of Taylor's duties would reveal that he assumed the magistrate's article 15.17(a) duty. Surely, Rivera reasons, this means that Taylor's authority is a fact question for a later stage. For two reasons, not so.

First, Rivera muddles the written agreement's role in an assigned-counsel regime. When a county opts for an assigned-counsel program, that county enters "a written agreement" with "a governmental entity, nonprofit corporation, or bar association." Tex. Code Crim. Proc.

Ann. art. 26.047(a)(2)(A). Presumably, Kinney County would have had a written agreement with the Lubbock Defenders. But that agreement would be irrelevant to the important relationship here: between the magistrate and the Val Verde facility administrator. We can examine this relationship as a matter of Texas law, without resorting to a written agreement that speaks to a different relationship.

Second, the complaint's description of the facility administrator's duties belies Rivera's claim that Taylor's duties were ministerial. Although Rivera conclusorily alleges that Taylor was "responsible under state law" for transmitting the paperwork, he also alleges that Taylor was hired "to help design, administer, and operate" Val Verde. He was "responsible for formulating, implementing, and executing policies, customs, and practices applicable to the" processing center. This included "the polices and customs that led to the denial of [Rivera's] . . . Sixth Amendment rights." Assuredly, executing these alleged duties required Taylor to exercise considerable discretion. And if Rivera expects discovery to reveal the opposite, he should have sought leave to amend the complaint. *See Davis v. A.G. Edwards & Sons, Inc.*, 823 F.2d 105, 108 (5th Cir. 1987) ("Factual assertions in pleadings are judicial admissions *conclusively* binding on the party that made them." (citation modified)).

Nor does *Brooks v. George County* advance Rivera's delegation theory. 84 F.3d 157 (5th Cir. 1996). In *Brooks*, a statute required a sheriff to keep and timely transmit inmate work records. *Id.* at 164. Because this statute explicitly assigned the sheriff this duty, he could not claim qualified immunity when an inmate alleged that he failed to perform it. *Id.* at 164–65. But Taylor had no analogous statutory duty; article 15.17 assigns the duty to transmit paperwork to the magistrate—not the facility administrator. *See* Tex. Code Crim. Proc. Ann. art. 15.17(a). *Brooks* offers no guidance on whether an official may

delegate their nondiscretionary statutory duty to another official. 84 F.3d at 164–65.

Simply put, Taylor meets his burden to show that he acted within his discretionary authority. Rivera's conclusory claims otherwise contravene Texas law, which generally holds that an officer may not delegate their official statutory duties. *See, e.g.*, *In re K.L.C.*, 990 S.W.2d at 243–44. And article 15.17's text confirms this, because the magistrate remains responsible to cause the paperwork to be transmitted. *See* Tex. Code Crim. Proc. Ann. art. 15.17. Because Taylor shows that he acted within his discretionary authority, he may assert qualified immunity.

## B. Taylor enjoys qualified immunity.

The burden now shifts to Rivera to defeat qualified immunity. *See Roy*, 950 F.3d at 254. He alleges that Taylor violated the Sixth Amendment by denying him counsel during a critical stage: when article 17.151 gave him the right to an affordable bond. But we need not resolve whether this states a constitutional violation because Rivera's claim plainly fails at the second immunity prong.[3]

To satisfy this prong, Rivera must show that the allegedly violated federal right was clearly established. *Orr v. Copeland*, 844 F.3d 484, 492 (5th Cir. 2016). A right is clearly established if it is "beyond debate that the defendant's conduct was unlawful." *Roy*, 950 F.3d at 254 (citation modified). While Rivera need not offer a factually indistinguishable case, prior decisions must have given Taylor "reasonable warning that [his] conduct . . . violated constitutional rights." *Crittindon*, 37 F.4th at 186.

---

[3] We "may consider either prong of the qualified immunity analysis first." *Gibson v. Kilpatrick*, 773 F.3d 661, 667 (5th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

Rivera claims that *Jauch v. Choctaw County* gave Taylor "fair warning that a jailer cannot hold a person in jail without lawful authority and without counsel or the ability to seek bail." 874 F.3d 425 (5th Cir. 2017). The distinctions between *Jauch* and this case are glaring. There, a police department detained Jauch for nine months without probable cause, and without an appearance before a judge. 874 F.3d at 428. Without a doubt, this violated the Fourteenth Amendment because "prolonged detention without . . . a court appearance violates the" Due Process Clause. *Id.* at 436. But Rivera alleges a violation of a different right. He was also promptly brought before a magistrate who presumably found probable cause for the arrest. And the 46-day delay in appointing counsel falls well-short of the 9-month delay before Jauch was brought before a judge. With such distinctions, *Jauch* cannot clearly establish the right at issue.

Nor can the cases showing that a critical stage can occur without a formal proceeding clearly establish Taylor's actions as unlawful. *Cf. McAfee v. Thaler*, 630 F.3d 383, 390–93 (5th Cir. 2011); *United States v. Pleitez*, 876 F.3d 150, 157–61 (5th Cir. 2017). In *McAfee*, we held that the opportunity to file a "motion for new trial, during the post-trial, pre-appeal period, is a critical stage." 630 F.3d at 393. And in *Pleitez*, we held that a final restitution determination was a critical stage, even though the district court issued the judgment without a hearing. 876 F.3d at 158–61. Because neither case addressed whether the expiry of a deadline for reduced bail qualifies as a critical stage, they offer Rivera no help.

The fact remains that Rivera presses a novel theory. Because our circuit has never considered the issue, or even a closely related one, Taylor would not have had reasonable warning that denying an arrestee counsel after the article 17.151 deadline would violate the Sixth Amendment. Hence Rivera cannot show that Taylor violated clearly established law, and his claim against Taylor fails the second qualified immunity prong.

No. 25-50714

\*     \*     \*

For these reasons, we REVERSE. Rivera's claim against Taylor is DISMISSED, and we REMAND for further proceedings.